## ANNIE McI. CLEGG v. I. N. CLEGG.

### (Filed 14 May, 1924.)

**1. Habeas Corpus — Parent and Child — Judgments — Reopening Case—Motions—Procedure.**

Where, in *habeas corpus* proceedings between husband and wife for the custody of their minor children, an order or judgment has been rendered which reserves the cause for further orders as changed conditions may require, either party may thereupon petition to have the matter reopened and proceeded with upon notice to the order and upon motion, in accordance with the course and practice of the courts.

**2. Same — Appeal and Error — Evidence — Findings — Modification of Judgment.**

On appeal from an order or judgment in *habeas corpus* proceedings between husband and wife for the custody of the infant children of the marriage, the facts as found by the judge of the Superior Court are conclusive on appeal when supported by sufficient evidence; and where a material finding does not appear to have been supported by such evidence, the Supreme Court may accordingly change or modify the order of the Superior Court judge, as the welfare of the children may require, under the circumstances presently appearing, and award the custody of the children to each of the parents alternately, requiring the giving of a bond for the observance of the conditions of the judgment or order thus changed or modified.

THIS was a motion to reopen the cause, heard by *Sinclair, J.* From ROBESON. Appeal by defendant.

This cause came on again for hearing upon the motion filed by the plaintiff on 27 November, 1923, praying the court to reopen this cause and to award to her the permanent custody of the three children—Ann Monroe Clegg, Margaret Clegg, and Archie Clegg—upon the grounds that conditions have materially changed since the entry of the former judgment herein. Plaintiff filed affidavit in support of said motion, and thereupon his Honor, N. A. Sinclair, judge riding the courts of the Ninth Judicial District, signed an order requiring the defendant to appear and show cause before him on 10 December, 1923, at the courthouse in Lumberton, and service of the motion, affidavit and order to show cause was duly served upon the defendant on 28 November, 1923.

CLEGG v. CLEGG.

Thereafter the defendant filed answer as appears of record. Thereafter the defendant filed motion praying for removal of this cause to some other judge for hearing upon the ground that his Honor, Judge Sinclair, had formed and expressed an opinion upon the facts. This motion was denied, his Honor finding facts as appears from the record. Thereafter, upon motion of counsel for the defendant and for their convenience, the hearing was continued until 19 January, 1924, at which time the hearing was not concluded, and the cause was again continued until 23 February, 1924, at which time the hearing was concluded. His Honor thereupon found the facts and rendered judgment, to which findings and judgment the defendant excepted and appealed to the Supreme Court.

*W. E. Lynch and Varser, McLean & Stacy for petitioner.*
*McIntyre, Lawrence & Proctor and H. F. Seawell for respondent.*

CLARKSON, J. In *Clegg v. Clegg,* 186 N. C., 40, when this case was before this Court, we said: "That this cause will be retained on the docket of the Superior Court of Robeson County, as this judgment is not intended to be a final determination of the rights of the parties touching the care and control of the children, and on change of conditions properly established the question may be further heard and determined."

The court below reopened the cause and found the facts and rendered judgment. The facts found and judgment, or order, rendered is as follows:

"This cause came on to be heard before the undersigned judge upon petition filed by plaintiff to reopen this cause and modify the judgment heretofore entered, and to award to her the permanent custody of the three children involved in this controversy, upon the ground of alleged changed conditions of the parties since the entry of the former judgment. Service of the petition and order to show cause was duly made upon the defendant, and he filed answer as appears of record.

"The cause was originally set down for hearing before the undersigned at chambers at Lumberton, N. C., in December, 1923, but upon application of the attorneys for the defendant, and for the convenience of the parties and their counsel, the hearing was continued from time to time until 19 January, 1924, at which time the hearing was begun, but not having been concluded upon that date, was again continued by consent until 23 February, 1924, at which time the parties, with their counsel, appeared before the undersigned judge at chambers at Lumberton, N. C., when the taking of testimony was completed and argument of counsel was heard.

CLEGG *v.* CLEGG.

"Upon consideration of the evidence, excluding from consideration all matters of hearsay contained in the affidavits and oral testimony, the court finds as follows:

"1. That the changes that have occurred since the entry of the former judgment herein are sufficient to require a modification of the former order.

"2. That the petitioner and the respondent are man and wife living in a state of separation, the petitioner living with her mother at Richmond, Va., and the respondent living at Fayetteville, N. C. The court further finds as a fact from the evidence adduced at this hearing that the conduct of the respondent towards the petitioner was such as to justify her in separating herself from him and in refusing to live with him further, and that such separation should not be taken against her as an abandonment. The court further finds as a fact that the treatment of the petitioner by the respondent was such as to render her condition intolerable and her life burdensome, and that by reason thereof she is forced to live separate and apart from respondent.

"3. That there have grown up such animosities between petitioner and respondent since the institution of this action, and such charges and counter-charges have been made by each against the other, that it is hopeless to expect a reconciliation such as would permit the two to further live together in harmony; and the court finds as a fact that it will be more conducive to the welfare and happiness of both the petitioner and the respondent for them to live separate and apart than to undertake to live together as man and wife, there being no hope of adjusting the differences between them.

"4. That shortly after the separation of the petitioner and respondent the families of each undertook to bring about an agreement between them with reference to the custody of their children, and that such an agreement was entered into between the families of the respective parties, and agreed to and acquiesced in by both petitioner and respondent, whereby it was agreed that the petitioner should have the care and custody of the three children, Ann Monroe, Margaret and Archie, and that the respondent should have the care and custody of the oldest boy, Newton; that, in pursuance of this agreement, the petitioner returned to North Carolina with the respondent to get the youngest child, Archie (she already having with her at that time the two girls, Ann Monroe and Margaret), but was prevented by her husband from taking the youngest child, Archie, back to Richmond with her.

"5. That respondent, since the former judgment in this cause, has given up his home in Rowland and the churches he served at that time and has since maintained no home, but has removed to the city of Fayetteville, where he has accepted missionary work with the First

Presbyterian Church of Fayetteville at a salary of $125 per month, and has abandoned the care and custody of his children to his sister, Marie Clegg, an elderly, unmarried lady who lives in Carthage, N. C., so that he no longer has the home-life which existed at the time of the former hearing when he had his own house and personal supervision over the children; that he only sees them at rare intervals, and the care and custody is no longer under his control, but is under the control of a third person, to wit, Marie Clegg, who lives in her father's home at Carthage, N. C.; that the father of the said I. N. Clegg is a man very old and decrepit, and is himself unable to have any supervision over these children; that, because of the fact that the respondent is now living at Fayetteville while his children are living at Carthage, the control, care and custody of the children having passed out of his hands, the conditions existing at the time of the former hearing no longer exist.

"6. That the respondent on 15 October, 1923, placed his children with his sister, Marie Clegg, at Carthage, N. C., who has the constant care of her father, who is very old and practically helpless, demanding the constant care and attention of the said Marie Clegg; and that the children of the petitioner now receive no attention whatever, except such as the said Marie Clegg is able to give them, and the court finds as a fact that the said Marie Clegg is not temperamentally suited or fitted to have the care and custody of small children; that she is an unmarried woman and unacquainted with the needs of small children, and lacking in sympathy, patience and experience necessary to give said children the care and attention that they should have.

"The court further finds as a fact that the surroundings of the home where the said children are kept is not conducive to their best interests or welfare; that the conditions in said home are detrimental to the interests of said children; that Luther Clegg, uncle of said children, lives in said home, and that he is addicted to drink and frequently intoxicated in the home, and by the use of whiskey creates an unwholesome atmosphere and distasteful example for said young children. Under all of the circumstances, and with the surroundings as they now exist, the court finds that the home where the said children are now kept is not a suitable place for them, and that the welfare and best interests of the three children, Ann Monroe, Margaret and Archie, require that they be allowed to live with their mother at the ancestral home of their maternal grandmother, at Richmond, Va.

"7. That, in accordance with the judgments heretofore entered in this cause, both by this court and the Supreme Court, the petitioner went to Carthage on 17 November, 1923, to see and minister unto her children; that she was at first denied admission to the home where her children were staying, and after being later admitted, she was forced

to see her children in a cold room without any fire, and while there she was abused, insulted, humiliated and physically assaulted by the aunt of said children, Marie' Clegg, and on several occasions she was sent away from said home; that she was denied the privilege of seeing her eldest son, Newton Clegg, at all. The court further finds that the respondent failed to properly treat his wife on the occasion of her visit to her said children; that he forcibly and on a public street in the town of Carthage, to the humiliation of petitioner, took one of the said children away from the petitioner; that when petitioner was abused and assaulted by Marie Clegg, the respondent was in an adjoining room, with the connecting door partially open, and did not interfere to make his sister desist, or attempt to protect his wife from insult and assault; and .the court further finds that the humiliation attendant upon petitioner visiting her said children at Carthage is more than she should be required to bear, and with the circumstances and surroundings as they now exist, the order heretofore entered in this cause, giving the petitioner the right to visit her said children, is rendered impossible of performance.

"8. That the petitioner, Annie McI. Clegg, is a resident of Richmond, Va., and lives with her mother, a woman of considerable property and abundantly able and willing to give of her means to the support and care of said children, and that the said Annie McI. Clegg is in all respects capable and a fit and suitable person to have the custody of said children, and to properly and carefully provide for them in her home at Richmond, Va., where she lives with her mother. Her mother is a woman about 70 years of age, worth about $40,000, and has a large commodious. home, and is a woman of high Christian character. The brothers of the petitioner are men of high standing and character, and the home in which petitioner now lives is found to be in every way a suitable and desirable place in which the children may live and grow up with their mother. The court finds that the welfare and the best interests of the children demand that they be awarded to their mother, Annie McI. Clegg, and that their welfare will be promoted by so awarding them to the custody of their mother, on account of the changed conditions in the home life of the respondent, and the changed circumstances in which the children are placed since the respondent abandoned them to the custody of another.

"9. That, under the changed circumstances and conditions as they now exist, respondent is incapable of giving to said children the support and care to which they are entitled, considering their station in life.

"10. That the failure of the respondent to protect his wife from the abuse, humiliation, insult and assault in the home of Marie Clegg, and the circumstances surrounding it, was such as would prevent the peti-

tioner from living with her husband at any place or at any time, and that her failure to return and live with him in the future cannot be held against her as abandonment.

"11. That Marie Clegg is hostile to the petitioner, and her influence over the children will be unwholesome and will result in prejudice being instilled in their young minds against their mother.

"12. That it would be inimical to the best interest of the children to be deprived of a mother's tender love and sympathy, two of them being young girls just at the age that demands a mother's care, and the other a little boy of such tender years that he needs his mother's constant love and affection.

"Upon the foregoing findings it is considered, adjudged and decreed that the application of the petitioner for modification of the former judgment be and the same is hereby allowed, and that the care and custody of the children, Ann Monroe, Margaret and Archie Clegg, is hereby awarded to the petitioner, Annie McIntosh Clegg."

In *Clegg v. Clegg, supra,* it was said: "This Court is bound by the findings of fact made by the court below, if such findings are supported by any competent evidence. This is now the well-settled law of this State."

From a careful review of the evidence, adduced in the court below, we are of the opinion that there was competent evidence to support all the findings of fact of the court below, with the exception of the fifth finding. We think that the evidence is not sufficient to show that defendant "has abandoned the care and custody of his children to his sister, Marie Clegg," etc. This evidence shows that this was a temporary arrangement.

The order, or judgment, of the court below is modified as follows: This Court is of opinion that the custody of said children, Ann Monroe, Margaret and Archie Clegg, should be awarded to the petitioner, Annie McIntosh Clegg, their mother, as herein provided, but that the welfare of said children would be subserved by spending a part of their time each year hereafter with the respondent, their father, I. N. Clegg, and to this end it is ordered, adjudged and decreed that the custody of said children is awarded the petitioner, their mother, Annie McIntosh Clegg, a portion of each year, as herein set out, and that the custody of the said children be awarded to the respondent, their father, a part of each year, as herein set out. Their father shall have the care, custody and control of said children during the months of June, July, and August of each year, except the year 1924; and the petitioner, their mother, shall have the care, custody and control of said children during the time they are not awarded to their father. The petitioner, their mother, Annie McIntosh Clegg, shall at all times during the time when the

respondent, their father, has the custody of the said children, from 1 June to 1 September of each year, have ingress and egress to the home of the respondent, her husband, to see said children, look after, nurse and care for them in such manner and way as will best promote the welfare of the children, but in no way impairing the authority of the respondent, the father, in the home. Either the petitioner or the respondent shall have the right to visit the children at any time, whether in the custody of the petitioner or respondent.

Both the petitioner and respondent, before taking the children herein named, shall give bond in the sum of $5,000 for the faithful performance of this order or judgment, and the said children shall be amenable at all times to the lawful orders of the courts of this State. The said bonds shall be made payable to the State of North Carolina and filed with the clerk of the Superior Court of Robeson County and approved by him before the children are turned over to either petitioner or respondent. The respondent shall pay the transportation each way for the children when he has the care and custody of them during the summer months; that the respondent deliver said children to the petitioner when she files the bond and it is approved by the clerk as herein set forth; that this cause will be retained on the docket of the Superior Court of Robeson County, as this judgment is not intended to be a final determination of the rights of the parties touching the care and control of the children, and, for good cause shown, the question of the custody of said children may be further heard and determined. The appeal of the respondent from the Superior Court is modified in accordance with this opinion.

The cost of the appeal and the hearing will be taxed against the respondent; that of the lower court to be made out and judgment entered therefor by the clerk of the Superior Court of Robeson County.

Modified and affirmed.